IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **Scotty Lee White,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Paul Hopkins, in his official capacity** )<br>**as Medical Center Director, et al.,** )<br>)<br>**Defendants.** )<br>) | Case No. 1:23-cv-00208-SNLJ |

# MEMORANDUM and ORDER

This matter comes before the Court on several motions filed by plaintiff and defendants.

## I. Factual Background

Plaintiff, who is *pro se*, filed his original complaint on November 29, 2023 against defendants Paul Hopkins, Ashley Lepold, Dane Roper, Angela Athmann, Chandra Miller, and John Taylor, whom plaintiff alleges are or were employees of the Department of Veterans Affairs. [Doc. 1.] He amended his complaint on January 10, 2024. [Doc. 16.] Plaintiff is a former employee at the Department of Veterans Affairs' John J. Pershing facility in Poplar Bluff, Missouri. He worked there from approximately 2014 until early 2023. In his First Amended Complaint, plaintiff set forth three causes of action against the defendants: (1) a claim under the Federal Tort Claims Act (FTCA); (2) a claim under the Fourteenth Amendment to the United States Constitution; and (3) a claim under Title

1

VII of the Civil Rights Act of 1964. *Id.* at 3. Plaintiff alleged that while he was conducting his official duties as an employee for the Department of Veterans Affairs (VA) he was exposed to mold and injured by that exposure. He further alleged that he reported the mold hazards to the United States Office of Special Counsel, an independent federal investigative and prosecutorial agency tasked with safeguarding the rights of federal employees. Plaintiff claims the Office of Special Counsel subsequently referred the hazards to be investigated by the Veterans Health Administration Office of the Medical Inspector, a division of the VA that investigates and monitors the quality of care provided by the VA. Plaintiff claims that that investigation resulted in the Office of the General Counsel, the VA's legal arm, issuing falsified reports, and that he reported these falsified reports to the Office of Inspector General, an investigative division of the VA. Plaintiff alleges that defendants retaliated against him in various ways for reporting the mold hazards and falsified reports, including by coming to his office in a threatening manner, locking his work computer, and making false allegations about his behavior. He alleges that some of this retaliation continued to occur after he ceased working for the VA. [Doc. 16 at 8–9.]

On February 26, 2024, defendants filed a motion to dismiss plaintiff's complaint with respect to all three claims. [Doc. 33.] In response, plaintiff filed a motion for leave to file a response to defendants' motion to dismiss in excess of the typical page limitations, [Doc. 40], to which he attached his proposed 81-page response, [Doc. 40-1; Doc. 40-2.]

2

On March 27, 2024, plaintiff filed a motion to amend his complaint for a second time. [Doc. 43.] Plaintiff's proposed Second Amended Complaint contains all the factual allegations found in his First Amended Complaint, plus some further allegations of defendants' wrongdoing and resultant damages. He also seeks through his proposed Second Amended Complaint to retain the three claims present in his First Amended Complaint, while adding claims under the Fifth Amendment to the United States Constitution and Titles II and III of the Civil Rights Act of 1964. [Doc. 51 at 3.] Defendants opposed this motion on the basis that the Second Amended Complaint would not survive a motion to dismiss. [Doc. 52.] Finally, on May 6, 2024, defendants filed a motion to dismiss plaintiff's Federal Tort Claims Act claim specifically on the basis that this Court does not have subject-matter jurisdiction over that claim. [Doc. 53.]

This Court will review each of the claims found in plaintiff's First Amended Complaint and his proposed Second Amended Complaint to determine whether any or all of them should be dismissed. For the purposes of this memorandum and order, the Court will grant plaintiff's motion for leave to file in excess of page limitations, [Doc. 40], and will consider in its entirety plaintiff's 81-page response to defendants' motion to dismiss.

**II. Applicable Law**

The standard for ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is set forth in the Supreme Court case *Ashcroft v. Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual

3

> content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The typical means of evaluating dismissal of a case is upon review of a motion from one of the parties. However, courts are permitted to issue a *sua sponte* dismissal in limited circumstances. In particular, a court may issue a *sua sponte* dismissal "'when it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint.'" *Murphy v. Lancaster*, 960 F.2d 746, 748 (8th Cir. 1992) (quoting *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991)). Additionally, Federal Rule of Civil Procedure 12(h)(3) demands that a court dismiss an action if it determines—at any time during the proceedings—that it lacks subject-matter jurisdiction over the claim(s).

With respect to motions for leave to amend a complaint, the Federal Rules of Civil Procedure exhort courts to grant such motions "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend should be granted absent a good reason for the denial, such as…futility." *Fuller v. Secretary of Defense of the United States*, 30 F.3d 86, 88 (8th Cir. 1994). A "[d]enial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). Consequently, although courts are generally permissive with granting leave to amend

4

complaints, a court's legal conclusion that a proposed amended complaint could not withstand a motion to dismiss is a legitimate reason to deny such leave.

### III. Analysis

The Court will examine each of the claims present in plaintiff's First Amended Complaint, as well as those he seeks to add in his proposed Second Amended Complaint, in turn.

### A. Federal Tort Claims Act

Plaintiff's Federal Tort Claims Act claim will be dismissed for several reasons.

First, plaintiff's FTCA claim as it relates to his allegation that defendants retaliated against him while he was employed at the VA for reporting mold exposure and falsified documents is preempted by the Civil Service Reform Act (CSRA) and the Whistleblower Protection Act (WPA). "The CSRA 'established a comprehensive system for reviewing personnel action taken against federal employees.'" *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)); *cf. Swartz v. IRS*, 884 F.2d 1128, 1129 (8th Cir. 1989) (holding that the CSRA "provides a comprehensive scheme for review of federal personnel actions"). Further, "the WPA 'does not authorize government employees to bring FTCA claims based on conduct for which redress is available under the CSRA.'" *Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993) (quoting *Rivera v. United States*, 924 F.2d 948, 952 (9th Cir. 1991)). As such, plaintiff's allegations of whistleblower retaliation fall under the CSRA and WPA, and not the FTCA.

Furthermore, at the time of the relevant alleged conduct, plaintiff was employed by the Veterans Health Administration as a medical technologist, [Doc. 33-1], and the CSRA applies specifically to medical technologists, 5 U.S.C.S. § 7511(b)(10); 38 U.S.C.S. § 7401(3).

Additionally, the text of the CSRA similarly includes in its list of "prohibited personnel practices" the taking of a "personnel action" against employees for disclosing abuse of authority, violations of rules, or substantial or specific dangers to public health or safety.  5 U.S.C.S. § 2302(b)(9)(A)(ii).  "Personnel actions" include "disciplinary or corrective action" and any "significant change in duties, responsibilities, or working conditions."  5 U.S.C.S. § 2302(a)(2)(A).  Inexplicably, plaintiff argues that defendants' relevant alleged conduct does not meet this definition of a prohibited personnel practice, [Doc. 40-2 at 23], but it obviously does; he alleges that in response to his whistleblowing various individuals retaliated against him in a manner that constituted a significant change in his working conditions, and may also be characterized as disciplinary or corrective.  *See Weber v. Named Federal Officials*, No. 95-2164, 1995 U.S. App. LEXIS 27217, at *2 (8th Cir. Sept. 25, 1995) (affirming district court ruling where district court "concluded retaliation for whistleblowing activities is covered by the CSRA").

For these reasons, plaintiff's FTCA claim as it relates to his allegation of whistleblower retaliation while he was employed by the VA is preempted by the CSRA and the WPA.  That claim is accordingly dismissed.

Plaintiff further alleges that some of the retaliation occurred after his employment at the VA ceased.  Specifically, plaintiff alleges that his computer access was locked and

6

defamatory statements were made against him in December 2023, nearly one year after the end of his tenure with the VA, and implies some retaliation may be ongoing.  [Doc. 51 at 9–10.]  Obviously, lack of access to his VA computer is not actionable except in the sense that it relates to his firing, not to any continuing retaliation.  As to post-firing retaliation, it is not clear to this Court that the CSRA preempts such claims.  The text of the CSRA is ambiguous as to whether it applies to whistleblower retaliation against both current *and* former employees.  The relevant section dealing with whistleblower retaliation prohibits such action "with respect to any employee or applicant for employment," but is silent on the topic of former employees.  5 U.S.C.S. § 2302(b)(8).  At least one case, however, suggests Section 2302 does *not* apply to former employees: "[b]y its terms, section 2302(b)(8) does not cover a personnel action taken against a former employee…based on a disclosure made by that former employee." *Guzman v. Opm*, 53 Fed. Appx. 927, 929 (Fed. Cir. 2002) (per curiam).

Without deciding this issue here, plaintiff's allegations of post-employment whistleblower retaliation will be dismissed for a separate reason: even assuming the FTCA does apply, he failed to exhaust his administrative remedies.  The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)).  To have exhausted administrative remedies, a claimant must "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing…" 28 U.S.C. § 2675(a).  "Exhaustion of [administrative] remedies is a

7

jurisdictional prerequisite to the maintenance of an action under the Federal Tort Claims Act." *Celestine v. Veterans Admin. Hospital*, 746 F.2d 1360, 1362 (8th Cir. 1984). Plaintiff has not satisfied these requirements.

In May 2023, plaintiff presented some of his claims to the VA by filing a "Standard Form 95," the form used to present claims under the FTCA. [Doc. 53-1.] On the record here, this is plaintiff's only instance of presenting claims to the VA under the FTCA, and plaintiff did not identify any final ruling by the VA on this matter. In that form, plaintiff complained that defendant Chandra Miller attempted to confiscate his personal identity verification card and that he was "threatened and terminated from employment" after reporting injuries related to mold.[1] *Id.* Critically, however, plaintiff's Standard Form 95 does not include allegations of the *post*-termination retaliation detailed in his complaint; nor could the form have included such allegations—even in principle—because his complaint alleges post-employment retaliation occurring in December 2023 and beyond, more than six months *after* this Standard Form 95 was filed.

To summarize: plaintiff submitted a claim to the VA under the FTCA, but this claim did not include allegations of the post-termination retaliation detailed in his complaint in the present action and apparently has not been adjudicated by the VA itself. This Court accordingly finds that, with respect to his allegations of post-termination retaliation, plaintiff has not satisfied the administrative exhaustion requirement outlined

---

[1] Though on this Standard Form 95 plaintiff states the date of this incident was February 3, 2023, [Doc. 53-1], multiple places throughout the record (including plaintiff's own complaint and briefing) testify as to this occurring on January 27, 2023, *see, for example*, [Doc. 33-2 at 1], [Doc. 40-2 at 9], [Doc. 51 at 9.]

8

by Section 2675(a) and as required by the Supreme Court in *McNeil*. Plaintiff's claim to that effect is therefore dismissed for lack of subject-matter jurisdiction.

Next, plaintiff's FTCA claim as it relates to his separate allegation that he was injured due to mold exposure is preempted by the Federal Employees Compensation Act (FECA). "The FECA explicitly provides that it is the exclusive remedy for a federal employee injured on the job." *Griffin v. United States*, 703 F.2d 321, 321 (8th Cir. 1983) (citing 5 U.S.C. § 8116(c)). Plaintiff's complaint explicitly states that he "was doing [his] duties on official time" when he discovered mold in his work facility. [Doc. 16 at 8.] To the extent plaintiff suffered injuries from mold exposure, it is evident from the text of his complaint that this occurred during his execution of his duties as a VA employee. Consequently, the FECA is the exclusive remedy for such a claim, and his FTCA claim for injuries due to mold exposure must be dismissed.

Finally, plaintiff's FTCA claim as it relates to injuries sustained from mold exposure is barred by the statute of limitations. A tort claim under the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues…." 28 U.S.C.A. § 2401(b). According to plaintiff's Notice of Occupational Disease and Claim for Compensation he filed with the Office of Workers' Compensation Programs in 2019, he first realized he was harmed by exposure to mold in February 2015. [Doc. 33-5.] Because more than two years passed between plaintiff's discovery of the existence of this potential claim and presentation to the appropriate federal agency, his claim for injuries related to such mold exposure under the FTCA is barred.

9

In sum, this Court finds that plaintiff has failed to present a viable claim for recovery under the FTCA, and his FTCA claim will therefore be dismissed.

### B. Fifth Amendment Claim

In his proposed Second Amended Complaint, plaintiff seeks to add a claim under the Fifth Amendment to the United States Constitution. The Court will not permit him to do so because his proposed Fifth Amendment claim is barred by the doctrine of sovereign immunity, and this Court thus does not have jurisdiction over such a claim.

As an initial matter, it is not obvious to the Court in what way plaintiff is alleging his Fifth Amendment rights were violated. The text of his proposed Second Amended Complaint provides no clear basis for a Fifth Amendment claim. Reference to plaintiff's briefings suggests he claims his Fifth Amendment due process rights were somehow violated by defendant Dane Roper improperly interfering in some prior arbitration process. [Doc. 40-2 at 49–51]; [Doc. 56 at 13–15.] But such allegation is wholly absent from plaintiff's complaint. This Court must evaluate the sufficiency of plaintiff's claim from the allegations set forth in his complaint, and not from novel facts alleged only in his briefing; "'it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Because the allegation that defendant Roper interfered with an arbitration process is not present in either plaintiff's First Amended Complaint or proposed Second Amended Complaint, plaintiff failed to allege a claim to that effect.

10

Moreover, the Court finds no other facts alleged in either complaint that are suggestive of a Fifth Amendment due process violation.

Nonetheless, even if plaintiff *had* presented sufficient facts in his complaint to suggest a Fifth Amendment due process violation, the Court would still forbid him from adding such a claim to his complaint because it is barred by the doctrine of sovereign immunity, which "is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "The term sovereign immunity refers to a general rule that the government cannot be sued unless it allows itself to be sued." *Claude v. Smola*, 263 F.3d 858, 860 (8th Cir. 2001). This doctrine does not *ipso facto* shield federal officials from all suits. In *Bivens v. Six Unknown Federal Narcotics Agents*, the Supreme Court held that a plaintiff may sue federal officials for violations of the Fourth Amendment. 403 U.S. 338 (1971). Nearly eight years later, the Supreme Court held that the reach of the *Bivens* action extends to the Due Process Clause of the Fifth Amendment, which appears to be the basis on which plaintiff is seeking relief here. *Davis v. Passman*, 442 U.S. 228 (1979).

However, the Eighth Circuit clarified that a *Bivens* claim is only properly brought against a federal official when he or she is "acting in his or her *individual* capacity." *Buford v. Runyon*, 160 F.3d 1199, 1203 n. 6 (8th Cir. 1998) (emphasis added). A *Bivens* action against a public official in his *official* capacity, on the other hand, is barred by the doctrine of sovereign immunity. *Id.* at 1203.

In briefings, plaintiff has variously conveyed that he is suing (1) all of the defendants in their official capacities, [Doc. 40-2 at 32], (2) all of the defendants in both their official *and* individual capacities, [Doc. 38 at 2]; [Doc. 56 at 13], (3) defendant

11

Dane Roper in his individual capacity only and the other defendants in their official capacities only, [Doc. 39 at 1], and (4) defendant Dane Roper in his individual capacity and official capacity and the other defendants in their official capacities only, [Doc. 40-2 at 2, 61.]  Reference to plaintiff's statements in briefing provides no consistent answer to the capacities in which he is suing the defendants.

On the contrary, both plaintiff's First Amended Complaint and proposed Second Amended Complaint are consistent in that they are silent as to whether he is suing defendants in their official or individual capacities.  "If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998).

For several reasons, the Court interprets plaintiff to be suing defendants in their official capacities only.  First, as just noted, plaintiff's complaint does not specify whether he sues defendants in their official or individual capacities, and Eighth Circuit precedent holds that such complaints are to be construed as suits against defendants in their official capacities only.  *Id.*  Second, the civil complaint form plaintiff used to file his original complaint, First Amended Complaint, and proposed Second Amended Complaint placed him on notice that he was obliged to designate the capacity(ies) in which he is suing defendants.  That form unambiguously and conspicuously instructed plaintiff: "[i]f you are suing for violation of your civil rights, you ***must*** state whether you are suing each defendant in an official capacity, individual capacity, or both." [Doc. 1 at 2]; [Doc. 16 at 2]; [Doc. 51 at 2] (emphasis added).  Despite filling out this form on three

12

separate occasions, plaintiff never followed these clear instructions.  He had multiple opportunities to specify the capacity(ies) in which he sues defendants on his form; he cannot now complain if the Court interprets his omission in accordance with Eighth Circuit precedent.  Third, defendants' briefing placed plaintiff on notice that precedent exists holding that his failure to designate the capacities in which he sues defendants could result in those claims being interpreted as being against defendants in their official capacities only.  [Doc. 30 at 3]; [Doc. 37 at 22.]  Despite this notice, plaintiff subsequently filed a proposed Second Amended Complaint in which he failed to designate the capacities in which he is suing defendants; he cannot now argue that he lacked fair notice or opportunity to specify the nature of his complaint.  Fourth and finally, given the facts noted above, defendants would be prejudiced if plaintiff's complaint is interpreted to include individual capacity claims.

Consequently, this Court finds, for all the above reasons—and in accordance with the cited precedent—the doctrine of sovereign immunity bars his Fifth Amendment due process claim.  Accordingly, the Court will not permit plaintiff to amend his complaint to add such a claim.

### C.  Fourteenth Amendment Claim

Plaintiff's Fourteenth Amendment claim will be dismissed because it is not a claim upon which relief could be granted.

Once again, it is altogether unclear on what basis plaintiff is claiming his Fourteenth Amendment rights have been violated.  His briefing states that he has a right to be free from retaliation under the Fourteenth Amendment, and that defendants violated

13

his Fourteenth Amendment Rights, but does not provide much clarification as to what he means by that [Doc. 40-2 at 51, 63.] Given plaintiff's *pro se* status, it appears possible that plaintiff has confused the Fourteenth Amendment and Fifth Amendment as bases for recovery, especially because plaintiff referenced the Fifth Amendment in one of his briefings he submitted before he sought leave from the Court to add a Fifth Amendment claim to his complaint. *See* [Doc. 40-2 at 49, 61.]

Regardless, plaintiff's Fourteenth Amendment claim must be dismissed. If this Court construes plaintiff's Fourteenth Amendment claim as a Fifth Amendment claim in disguise, such a claim fails for the reasons set forth in Section III.B of this memorandum, *supra*. If the Court instead construes plaintiff's Fourteenth Amendment claim as a Fourteenth Amendment claim, it fails because the facts as alleged supply no cognizable defendant against whom a successful Fourteenth Amendment claim could be brought. "It is beyond dispute that the fourteenth amendment has no application in a case such as this where the constitutional violations are alleged to have been committed by federal officers." *Hefti v. McGrath*, 784 F. Supp. 1426, 1431 (E.D. Mo. 1992). *Cf. San Francisco Arts & Ath., Inc. v. United States Olympic Comm.*, 483 U.S. 522, 542 n. 21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the [United States Olympic Committee] and the Federal Government. Therefore, the Fourteenth Amendment does not apply"); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the *states* from denying federal constitutional rights and which guarantees due process, applies to acts of the *states*…") (emphases added).

14

In this case, defendants are employees of the federal government, not the state. Nowhere in his complaint does plaintiff allege that he was harmed by the state or state actors. The Court is aware that this specific basis for dismissing plaintiff's Fourteenth Amendment claim was not fleshed out in its entirety by defendants, although the inappropriateness of a Fourteenth Amendment claim is alluded to in defendants' briefing. [Doc. 37 at 21 n. 6] ("Although White alleges a claim under the Fourteenth Amendment, it is the Fifth Amendment that allows suits under the *Bivens* doctrine against federal employees for violating constitutional rights"). Nonetheless, "'it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint,'" because he is suing federal—not state—actors. *Murphy*, 960 F.2d at 748 (quoting *Smith*, 945 F.2d at 1043). The Court thus legitimately dismisses on this basis.

### D.  Civil Rights Act of 1964 Claims

The Court will evaluate the sufficiency of each of plaintiff's claims under Titles II, III, and VII of the Civil Rights Act of 1964 in turn.

#### 1. Title II Claim

In his proposed Second Amended Complaint, plaintiff seeks to add a claim under Title II of the Civil Rights Act of 1964. [Doc. 51 at 3.] This Court will not permit plaintiff to amend his complaint to add this claim because it fails to state a claim upon which relief could be granted. Title II of the Civil Rights Act of 1964 prohibits discrimination or segregation within places of public accommodation "on the ground of race, color, religion, or national origin." 28 U.S.C.A. § 2000(a). Nowhere in his proposed Second Amended Complaint does plaintiff allege that he was discriminated

against or denied equal access to places of public accommodation due to his race, color, religion, or national origin. Consequently, even accepting all of his factual allegations as true, there is simply no basis on which plaintiff could plausibly prevail in a Title II claim.

### 2. Title III Claim

In his proposed Second Amended Complaint, plaintiff also seeks to add a claim under Title III of the Civil Rights Act of 1964. [Doc. 51 at 3.] This Court will not permit plaintiff to amend his complaint to add this claim because it also fails to state a claim upon which relief can be granted. Title III of the Civil Rights Act of 1964 states:

> Whenever the ***Attorney General*** receives a complaint in writing signed by an individual to the effect that he is being deprived of or threatened with the loss of his right to the equal protection of the laws, ***on account of his race, color, religion, or national origin, by being denied equal utilization of any public facility*** which is owned, operated, or managed by or on behalf of any State or subdivision thereof, other than a public school or public college…and the ***Attorney General*** believes the complaint is meritorious and certifies that the signer or signers of such complaint are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief and that the institution of an action will materially further the orderly progress of desegregation in public facilities, the ***Attorney General is authorized to institute for or in the name of the United States a civil action*** in any appropriate district court of the United States against such parties and for such relief as may be appropriate, and such court shall have and shall exercise jurisdiction of proceedings instituted pursuant to this section.

42 U.S.C.S. § 2000b (emphases added).

Reference to the text of Title III provides at least two reasons why plaintiff has failed to state a claim upon which relief can be granted. First, Title III permits the Attorney General to bring a claim, not a private individual. Second, Title III protects against an individual being denied equal utilization of public facilities on the basis of his

16

race, color, religion, or national origin; and plaintiff makes no allegation that any such denial has occurred. Accordingly, there no basis on which plaintiff could prevail in a Title III claim, so the Court will not permit him to add this claim to his complaint.

### 3. Title VII Claim

Plaintiff's Title VII claim also will be dismissed because it fails to state a claim upon which relief can be granted. Title VII of the Civil Rights Act of 1964 renders certain employment practices unlawful when they are done on the basis of or because of an individual's race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000(e)-2. As discussed *supra*, nowhere in his complaint does plaintiff allege that he was harmed because of any of these protected characteristics. Consequently, there is no basis on which plaintiff could prevail in a Title VII claim, and his claim will be dismissed.

## IV. Summary

The Court has evaluated each of plaintiff's claims found in his First Amended Complaint, as well as those claims he seeks to add in his proposed Second Amended Complaint. As explained above, this Court concludes that plaintiff's claims in his First Amended Complaint must be dismissed; and the Court will not permit plaintiff to amend his complaint to add his new claims, because they would not survive a motion to dismiss.

Specifically, the Court finds that plaintiff's FTCA claim fails variously due to preemption, failure to exhaust administrative remedies, and the relevant statute of limitations, and plaintiff's Fourteenth Amendment and Title VII claims fail because they are not claims upon which relief could be granted. The Court will not allow plaintiff to add a Fifth Amendment claim because the Court has no jurisdiction over such claim.

And the Court will not allow plaintiff to add claims under Titles II or III of the Civil Rights Act of 1964 because under neither Title has plaintiff stated a claim upon which relief could be granted.

This entire action is dismissed because all extant claims are dismissed and the plaintiff is denied leave to amend his complaint further.  Because the Court finds that plaintiff's FTCA claim regarding post-employment whistleblower retaliation is dismissed due to lack of subject-matter jurisdiction, that claim is dismissed without prejudice.  The other claims, being dismissed due to their demerits, are dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file in excess of page limitation [Doc. 40] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend/correct complaint [Doc. 43] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [Doc. 33] is **GRANTED**.

**IT IS FURTHER ORDERED** that, in accordance with the reasoning set forth in this memorandum, this case is **DISMISSED WITH PREJUDICE**, with the exception of plaintiff's Federal Tort Claims Act claim as it relates to specifically post-employment retaliation, which is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that plaintiff's motion for preliminary injunction [Doc. 24], defendants' motion to substitute party [Doc. 29], defendants' motion to dismiss plaintiff's FTCA claim [Doc. 53], plaintiff's motion for leave to file additional memorandum in support of motions [Doc. 61], and plaintiff's motion for sanctions [Doc. 63] are **DENIED** as moot.

Dated this 2nd day of July, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE